UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 5:20-VV-00337-JMH-EBA

DA'QUANTAE DELANE SMITH,                                              PLAINTIFF,

V.            **REPORT AND RECOMMENDATION**

BILLY WELCH, *et al.*,                                                DEFENDANTS.

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Da'Quantae Delane Smith filed a civil complaint pursuant to 42 U.S.C. § 1983 alleging officials from the Fayette County Detention Center ("FCDC") acted in violation of the Fourth Amendment when correctional officers allegedly exposed Smith during an intake assessment in view of other inmates while a female officer recorded the search. [R. 1]. Currently before this Court are Defendants Billy Welch and Shane Courtney's (collectively, the "Defendants") Motion for Summary Judgment. [R. 65]. Smith failed to file any response after being ordered to do so by the Court. *See* [R. 66]. Thus, the matter being fully briefed, and following a review of the record, the Court **RECOMMENDS** that summary judgment be granted for the Defendants.

**FACTS & PROCEDURAL HISTORY**

On November 25, 2019, Da'Quantae Delane Smith was arrested by the Fayette County Sheriff on charges of Assault in the Fourth Degree, and Unlawful Imprisonment in the Second Degree. [R. 65-1 at pg. 1]. After being taken into custody, deputies transferred Smith to the Fayette County Detention Center ("FCDC").

According to Defendants, Smith was combative prior to entry. [R. 28-2 at pg. 1]. Smith claims that he was not combative because he was restrained and placed in a chair after being

removed from the deputies' vehicle. [R. 1 at pg. 2]. According to the Incident Report related to the incident underlying the instant action, Smith was assessed by an FCDC nurse and cleared for entry. [R. 28-2 at pg. 1]. However, after refusing medical screening, the FCDC nurse noted that Smith should be placed in FCDC Unit A ("Unit A") for medical observation until he was cleared by a medical provider. Officers noted that Smith should have been taken to Unit A but, due to Smith's combativeness, instead moved him to FCDC Unit G ("Unit G"). [*Id.*]. After being escorted to Unit G, officers "placed [Smith] in the prone position" and removed "[a]ll non-allowable clothes" before being securing him in a cell. [*Id.*]. Another FCDC nurse reported to Unit G, completed an assessment, and cleared Smith to be released into the general population. [*Id.*]. The Incident Report also indicates that a female correctional officer, Rosita Rodriguez, recorded the assessment after learning that a combative male was undergoing intake in Unit G.

Defendants admit that the assessment described in the Incident Report was "search," [R. 65], and Smith's Complaint construes it as a "strip search." [R. 1]. Smith further asserts that Officers Welch and Courtney stripped him down in view of other inmates, while a female officer inappropriately recorded the incident on a handheld video camera. [R. 1 at pg. 2]. He further alleged:

> Officer[s] Billy Welch and Shane Courtney stripped me from my clothes while there was a female present recording me on a hand[-]held camera. [In] a unit in a[n] undisclosed or private area [where] other inmates could see my body completely naked also. . . . I was remove[d] from the car [and] I was place[d] in a restraint chair. [The recording of the incident] show[s] that I pleaded for medical attention for my injur[ies] [that occurred during the arrest]. . . . They wheeled me to the cell[,] pushed me to the ground and pulled my underwear off my body while [Officer] Rodriguez was there recording the entire time . . . . [FCDC officials] told me that they hadn't done anything wrong. And that because of my charges I would've been strip[] search[ed] in intake. . . . I may have gotten strip search[ed] anyway, but it would have been in a private location. Other people/inmates wouldn't been able to see my body completely naked. A female wouldn't have been present. And especially I wouldn't have been recorded. They then say in the Response to my grievance that I was combative. The entire time I was cuff[ed] behind my back [and] strapped in [a] chair[.]

[R. 1 at pg. 3].

Smith filed the instant action on August 8, 2020, seeking relief under 42 U.S.C. § 1983. [R. 1]. The Complaint alleges that Defendants violated his Fourth Amendment when officers conducted an unreasonable search, his "rights of privacy and personal autonomy," and his "zone of privacy" which protected him against inspections and regulatory searches of his person. [R. 1 at pg. 4]. He named as Defendants FCDC and Officers Welch and Courtney.

Following an initial screening by the presiding judge, the Court dismissed Smith's claims against FCDC. [R. 18]. Officers Welch and Courtney moved for summary judgment on the basis that Smith had erroneously identified the officers in his Complaint. [R. 28]. As evidence that Officers Welch and Courtney were not involved in the November 25 incident, Defendants submitted affidavits, the FCDC Incident Report, and the Officer Courtney's timecard for November 25, 2019. *See* [R. 28-2]. Both affiants, Officers Welch and Courtney, assert that they were not present for the events alleged in Smith's Complaint.[1] [R. 28-1, 28-3]. The Incident Report, moreover, does not document Officers Welch or Courtney being involved in the events described therein. Smith responded, stating that surveillance footage would show Officers Welch and Courtney were, indeed, involved in the November 25, 2019 incident.[2] [R. 30 at pg. 2]. Considering the stage of the litigation, and that the alleged video footage had not yet been subject to discovery, the presiding judge denied Defendants' motion for summary judgment, stating there remained "a factual dispute over whether the named Defendants were even involved in the relevant incident." [R. 34 at pg. 2].

---

[1] Officer Welch stated that on November 25, 2019 he was assigned to Unit A. [R. 28-1 at pg. 1]. Officer Courtney stated that he was not on duty the night of November 25, 2019, [R. 28-3 at pg. 11], and a printout of his timecard supports his assertion. [R. 28 at pg. 2].
[2] Defendants have consistently stated that, upon viewing the alleged footage, they do not appear at any time during Smith's search.

At multiple junctures during the course of litigation, Smith has mentioned that both FCDC surveillance footage and the video recorded by Officer Rodriguez would demonstrate that Officers Welch and Courtney perpetrated the alleged unconstitutional strip search of Smith on November 25, 2019. In a prior pleading before the Court, Smith stated:

> [The] recordings show that Officer Billy Welch came from Unit A to [Unit G] whe the signal was called in saying that I was combative. . . . [A]ll the officers who were present[,] male and female inmates . . . was looking through the cell[']s window of me being stripped.
>
> And yes[,] these facility tapes will also pinpoint Officer Billy Welch and Shane Courtney exiting the cell with my clothes and it will pinpoint the[m] because when the[y] exit the door[,] the camera is pointing directly at their name tags.

[R. 30 at pg. 2].

However, to date Smith has not produced, nor requested the production of, any footage which shows Officers Courtney or Welch conducting the search of Smith in Unit G on November 25, 2019. In a prior Order, the Court advised Smith that he could file such footage into the record. [R. 57]. He has not done so.

The presiding judge referred the matter to the undersigned to oversee discovery and prepare proposed findings of fact and recommendations on any future dispositive motions. [R. 34]. Now, the Defendants again move for summary judgment, arguing that Smith cannot prove that Officers Welch and Courtney acted in violation of § 1983 and, irrespective of their involvement, they would be entitled to qualified immunity. [R. 65].

## STANDARD OF REVIEW

Under Rule 56, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Such a motion then "requires the nonmoving party to go beyond the pleadings and by

[his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id*. at 324 (internal quotation marks omitted). This is so because "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Id.* at 323–24. To avoid summary judgment, the non-movant must come forward with evidence on which a jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The following factors bear consideration by a court when entertaining a motion for summary judgment:

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.
>
> 4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.
>
> 6. As on federal directed verdict motions, the "scintilla rule" applies, *i.e.,* the respondent must adduce more than a scintilla of evidence to overcome the motion.
>
> 7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.
>
> 8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

> 9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.
>
> 10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 324. When reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). "[T]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland v. Mich. Dept. of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003) (citing *Anderson*, 477 U.S. at 251). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). In such a case, summary judgment is warranted. *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010); *Celotex,* 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

## ANALYSIS

Defendants argue that they are entitled to summary judgment because Smith has failed to

show that they violated 42 U.S.C. § 1983. Section 1983 creates a vehicle for plaintiffs to enforce the provisions of the United States Constitution and federal laws in response to conduct of a defendant taken under color of state law. To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law. *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006).

Defendants assert that Smith cannot satisfy either prong necessary to establish a claim under § 1983. At base, their argument is that Smith has not demonstrated, beyond his own "self-serving statement[s]," that either Officer Welch or Courtney were involved in the search that occurred on November 25, 2019. [R. 65]. Indeed, the Defendants have supplemented the record with an Incident Report which identifies the FCDC officers involved in Smith's intake (none of whom are the Defendants), sworn affidavits from Defendants, and timecards which all establish that both Defendants were not working in Unit G at the time of the search. *See* [R. 28-1–3]. An essential element to a § 1983 case is whether a person deprived the right of another while acting under the color of state law. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). Defendants dispute that they involved in the alleged incident, and the record contains ample evidence supporting their assertion that Smith has named the incorrect officers in this lawsuit. Thus, the burden shifts to Smith to present affirmative evidence that Officers Welch and Courtney were, indeed, the correctional officers involved in the November 25, 2019 search. *See Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989) ("So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'") (quoting *Celotex* and Fed. R. Civ. P. 59(e)).

Here, Smith has made no affirmative showing that there remains a genuine dispute of

material fact as he failed to respond to Defendants' motion for summary judgment. Moreover, Defendants further indicate that Smith has failed to respond to Defendants' Requests for Admission, which requested Smith, in relevant part,

1. "Admit that Ofc. Billy Welch was not physically present in any jail cell(s) that you occupied on or around November 25, 2019."
2. "Admit that Ofc. Billy Welch did not aide any officer in removing any item of your clothing on or around November 25, 2019."
3. "Admit that Ofc. Shane Courtney was not physically present in any jail cell(s) that you occupied on or around November 25, 2019."
4. "Admit that Ofc. Shane Courtney did not aide any officer in removing any item of your clothing on or around November 25, 2019."
5. "Admit that Ofc. Billy Welch was not involved in the incident that gives rise to your claim."
6. "Admit that Ofc. Shane Courtney was not involved in the incident that gives rise to your claim."

[R. 59]. The Defendants argue that the above admissions are conclusively established, as Fed. R. Civ. P. 36(a)(3) provides that a matter is considered admitted unless, within 30 days of service, the party upon whom the request is directed provides a written answer or objection. [R. 65 at pg. 5–6]. Defendants served the Request for Admissions on September 10, 2021. *See* [R. 59 at pg. 3]. Smith never answered, objected, or requested additional time to do so. The effect of Smith's failure to respond is to admit that the named Defendants were not involved in the events underlying this lawsuit.

Even viewing the entire record in favor of the nonmoving party, no rational trier of fact would find that there remains a genuine issue for trial. The "mere scintilla" of support for Smith's claims is the existence of incriminating video footage, which has not been produced to date despite Smith having the opportunity to engage in discovery. By contrast, the Defendants have provided ample evidence that they were not involved in the search underlying Smith's lawsuit, which Smith not refuted by failing to respond to Defendants' Requests for Admissions and Defendants' Motion for Summary Judgment. For these reasons, summary judgment in favor of the Defendants is appropriate. Because there is no question of fact, and the Defendants are entitled to summary

judgment, the Court need not address Defendants' argument that they are entitled to qualified immunity.

## RECOMMENDATION

Having fully considered the matter, and the Court being otherwise sufficiently advised,

**IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment [R. 65] be **GRANTED**.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed with the Clerk of the Court within fourteen days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). A\ general objection that does not "specify the issues of contention" is not enough to satisfy the requirement of written and specific objections. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are not enough to preserve the right of appeal. *Howard v. Secretary of HHS*, 932 F.2d 505, 508–09 (6th Cir. 1991). A party may respond to another party's objections within fourteen days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

Signed March 1, 2022.



Signed By:
*Edward B. Atkins*  *EBA*
**United States Magistrate Judge**